U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2013 MAY 13  PM 2:48

CLERK

Y_____ HBC
  DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

---

**VERMONT HARD CIDER COMPANY, LLC,**

a Delaware limited liability company,

Plaintiff,

v.

**WOODCHUCK COFFEE ROASTERS, LLC,**

a Vermont limited liability company,

Defendant.

Case No. 5:13-cv-78

---

## COMPLAINT

Plaintiff Vermont Hard Cider Company, LLC, for its Complaint against Defendant Woodchuck Coffee Roasters, LLC, alleges on information and belief:

### JURISDICTION AND VENUE

1.  This is an action seeking injunctive relief for Federal and common law trademark infringement under 15 U.S.C. §§ 1051 *et seq.* and restitution based on unjust enrichment.

2.  This Court has subject matter jurisdiction over the Federal claims pursuant to 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121, and supplemental jurisdiction pursuant to 28 U.S.C. §§1338 (b) and 1367. Acts giving rise to the claims asserted herein have occurred and will continue to occur in the State of Vermont and this District. Venue properly lies in this District under 28 U.S.C. § 1391.

## PARTIES

3.     Plaintiff Vermont Hard Cider Company, LLC, is a Delaware limited liability company, whose principal place of business is at 153 Pond Lane, Middlebury, Vermont 05753. It is the exclusive licensee and record owner for the United States of the trademarks pleaded herein, it produces goods bearing the trademarks, and it sells, advertises and distributes them throughout the United States and this District.

4.     Defendant Woodchuck Coffee Roasters, Inc., is a Vermont limited liability company whose principal place of business is at 11 Simpson Court, South Burlington, Vermont. It has solicited business from, and promoted and sold goods to, residents of Vermont and this District. The injury described herein has occurred and will continue to occur in this District.

## BACKGROUND

5.     Vermont Hard Cider Company, LLC ("Woodchuck") is a cidery in Vermont. In 1991, it began selling a "hard cider," i.e., an alcohol beverage made from fermented apple juice. It decided to name its cider WOODCHUCK, which is a colloquial term for the hardiest of Vermonters. It adopted as its logo a drawing of a woodchuck sitting on its haunches, facing left, and holding an apple. (These are referred to collectively as the "WOODCHUCK MARKS.") The current packaging bearing the WOODCHUCK MARKS is depicted below:

 

{B1045977.1 14

6. In 1991, hard cider was a popular beverage in the United Kingdom but had limited distribution in the United States. Woodchuck invested substantial amounts in marketing its product and creating consumer awareness of hard cider. By 1996 it was selling over 500,000 2.25 gallon cases of WOODCHUCK hard cider. It became the second largest selling brand of hard cider in the United States.

7. Since 2005, WOODCHUCK has been the largest-selling brand of hard cider in the United States. In 2007 it became the first American hard cider to sell over a million (1,000,000) 2.25 gallon cases liter cases annually. It now sells over three million (3,000,000) 2.25 gallon cases annually.

8. Although WOODCHUCK began as a locally-distributed product in Vermont, it is now distributed in all fifty (50) states through approximately 60,000 retail outlets.

9. Woodchuck has widely promoted the WOODCHUCK MARKS and has spent a substantial amount of money building brand awareness among consumers. In the alcohol beverage category, such promotions frequently include using the marks on advertising specialty items. Over the years Woodchuck has used its WOODCHUCK MARKS on and in connection with event sponsorships, posters, glassware, shirts (t-shirts, polo, work shirts, windshirts, etc), table tents, coasters, signs (wooden, tin, lighted), bottle openers, key chains, license plates, playing cards, backpacks, sweatshirts, hats (winter and baseball), sleds, jackets, sleeping bags, blankets, towels, grills, BBQ tools, yoyo's, tables, chairs, wooden and metal displays, tap handles, shelf stickers, promotional stickers & tattoos, lip balm, snowboards, water bottles, display pieces (such as scarecrows, wooden barrels, cardboard displays), mini refrigerators, wooden trunks, umbrellas, tents, banners, belt buckles, golf balls, golf club head covers, plastic cups, suspenders, coolers, hydropacks, bike jerseys, hammocks and chalkboards. Woodchuck

plans to expand its use of the WOODCHUCK MARKS to soaps, cheese, apple butter, maple syrup, rum, vodka and whiskey. Woodchuck also uses social media such as Twitter, Instagram, Pinterest and Facebook to promote its WOODCHUCK MARKS and to build and maintain consumer awareness and engagement with the brand.

10. Woodchuck is committed to being a socially and environmentally conscious business giving back to the land and community. Each year it contributes to dozens of charitable efforts, picks thousands of pounds of apples for the Vermont Foodbank, helps build homes through Habitat for Humanity of Addison County, and supports local cancer survivor organizations. In addition, it invests in local renewable energy, supports Vermont agriculture, and places a priority on reducing waste headed to Vermont landfills. These pillars are an important part of the company's overall mission.

11. The WOODCHUCK MARKS are strong and distinctive trademarks. As a result of the sales and promotional activities for the WOODCHUCK MARKS, they have achieved a high degree of consumer recognition among consumers. Woodchuck has developed strong common law trademark rights throughout the United States in the WOODCHUCK MARKS. The WOODCHUCK MARKS are especially strong in Vermont because Woodchuck is one of the State's thriving businesses (employing over 100 people) and because of its community and environmental activities in the State.

12. In addition to its common law trademark rights, Woodchuck has obtained or applied for Federal trademark registrations as follows:

| Mark | Registration Number | Registration Date | Goods |
|---|---|---|---|
| WOODCHUCK | 2,463,147 | June 26, 2001 | Alcoholic beverages, namely, hard cider |
| (Woodchuck Hard Cider logo) | 3,996,990 | July 19, 2011 | Hard cider |
| CELEBRATE WOODCHUCK DAY | 4,038,425 | October 11, 2011 | Hard Cider |
| WOODCHUCK | Application No. 85/711,930 | Filed on August 24, 2012 | Soaps for personal use, apple butter and cheese, maple syrup, rum, vodka and whiskey |

13.     Each of these registrations is valid and subsisting. Registration No. 2,463,147 is incontestable as provided for by 15 U.S.C. § 1065.

14.     Woodchuck has protected its WOODCHUCK MARKS from infringement. Woodchuck is the sole and exclusive Federal registrant of a WOODCHUCK trademark for foods and beverages in the United States.

15.     In 2012, Woodchuck, including the WOODCHUCK MARKS, was acquired by an Irish company, C&C Group plc. Following the acquisition, Woodchuck became the exclusive licensee of the WOODCHUCK MARKS for the United States.

16.     Defendant, Woodchuck Coffee Roasters, LLC, was incorporated in 2011 by two brothers, Anthony and James Basiliere. Woodchuck Coffee is in the business of roasting and selling coffee.

17.     Defendant's coffee label is strikingly similar to Woodchuck's label. It features an oval logo containing a woodchuck sitting on its haunches, just like the WOODCHUCK label. The only differences are that the woodchuck faces right and is holding a cup of coffee instead of an apple. On top of the logo is the word WOODCHUCK curved around the top of the oval logo, just as on Woodchuck's label. Defendant's label is depicted below:



18.     Defendant has recently begun aggressively marketing and promoting its Woodchuck trademark and logo. It created a Facebook page and is developing a web site. Its web site includes plans for an on-line store which will expand distribution nationally. It has begun selling its products in retail stores. Like Woodchuck, Defendant is positioning itself as a provider of sustainable, environmentally conscious goods.

19.     Defendant's use of the WOODCHUCK MARKS will injure and damage Woodchuck and the goodwill in the WOODCHUCK MARKS, and will inevitably cause consumer confusion, especially in Vermont. Woodchuck has begun to receive inquiries from residents of Vermont regarding whether it has gone into the coffee business. At least one retailer of Defendant's coffee has begun to tell consumers that Defendant's WOODCHUCK coffee "is

not to be confused with a well-known hard cider producer," i.e., Woodchuck. The likelihood of confusion will increase as Defendant expands its use and promotion of its Woodchuck label.

20. Defendant's adoption and use of the WOODCHUCK MARKS is willful and deliberate. The principals of Defendant were well aware of Woodchuck and the WOODCHUCK MARKS prior to adopting the infringing marks; one of them even provided services to Woodchuck at its cidery. Defendant adopted the WOODCHUCK MARKS precisely because the marks were already well-known to consumers in Vermont and elsewhere. This gave Defendant the opportunity to have instant brand recognition and to take advantage of the investment and goodwill in the WOODCHUCK MARKS that had been developed since 1991.

21. Woodchuck objected to Defendant's use of the WOODCHUCK MARKS as soon as it learned of it. Rather than rushing into the busy Federal Courts, however, Woodchuck engaged Defendant in businessman-to-businessman discussions and explained why Defendant's use of the WOODCHUCK MARKS would damage Woodchuck and its brands. Woodchuck offered to assist Defendant financially in transitioning to another name. Defendant took the position, however, that the approval of its business name (Woodchuck Coffee Roasters, LLC) by the Vermont Secretary of State gave it the absolute right to use the WOODCHUCK MARKS as trademarks for its coffee. It also claimed that it had an absolute right to use the WOODCHUCK MARKS because they were not being used on cider and because a woodchuck is a "common animal" whose image can be used by anyone. Woodchuck made numerous efforts to persuade Defendant that these arguments were wrong, and it appeared at one point that the parties were close to resolving the matter amicably. After Woodchuck's purchase by C&C Group became public, however, Defendant suddenly demanded a six-figure monetary payment for ceasing use of the WOODCHUCK MARKS. Shortly before filing this Complaint, Woodchuck gave

Defendant one last chance to cease using the WOODCHUCK MARKS, but Defendant refused and reiterated its demand for a six-figure monetary payment. This left Woodchuck with no choice but to file this Complaint.

## FIRST CAUSE OF ACTION

### (Infringement of Federally Registered Trademarks, 15 U.S.C. § 1114)

22. The allegations of Paragraphs 1-21 of this Complaint are hereby incorporated by reference.

23. Woodchuck was the first to use and file trademark applications for the WOODCHUCK MARKS. It has priority over Defendant. By virtue of their extensive use and promotion, the WOODCHUCK MARKS have become strong and distinctive trademarks uniquely identified with Woodchuck.

24. Defendant began using the WOODCHUCK MARKS in the promotion and sale of coffee without Woodchuck's consent. The word marks, WOODCHUCK, are identical, and the Woodchuck Logos are highly similar. The goods are similar, are both meant for human consumption, and in the normal course of trade will be sold and promoted to the same consumers in the same channels of trade. This unauthorized use of the WOODCHUCK MARKS by Defendant creates a likelihood of confusion with those marks and constitutes an infringement of Woodchuck's trademark rights under 15 U.S.C. § 1114.

25. The likelihood of confusion is increased because Woodchuck has used the registered trademarks in connection with multiple promotional products. Consumers are likely to believe that Defendant's coffee is simply another product sponsored or made by Woodchuck.

26. Woodchuck has been and will be injured and damaged by Defendant's use of the WOODCHUCK MARKS. Consumers have been confused and this is likely to continue and increase if Defendant is permitted to continue using the WOODCHUCK MARKS.

27. Defendant's infringing conduct is willful, deliberate, intentional and in bad faith. Defendant knew about the WOODCHUCK MARKS and, on information and belief, did not seek the advice of trademark counsel prior to adopting them. When asked to cease and desist, Defendant (again without consulting with counsel) asserted that it had an absolute right to use the WOODCHUCK MARKS, which it would only relinquish if paid a substantial amount of money. Defendant has continued to use and to expand the use of the WOODCHUCK MARKS with full knowledge of Woodchuck's objections.

WHEREFORE, Woodchuck prays for relief as set forth below.

## SECOND CAUSE OF ACTION

### (Common Law Trademark Infringement, 15 U.S.C. § 1125(a))

28. The allegations of Paragraphs 1-27 of this Complaint are hereby incorporated by reference.

29. Woodchuck has strong common law trademark rights in the WOODCHUCK MARKS in Vermont and throughout the United States. Defendant's use of the WOODCHUCK MARKS is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association with Woodchuck, or as to the origin, sponsorship, or approval the goods or commercial activities in violation of 15 U.S.C. § 1125 (a).

WHEREFORE, Woodchuck prays for relief as set forth below.

## THIRD CAUSE OF ACTION

### (Restitution Based On Unjust Enrichment)

30. Woodchuck realleges and incorporates by reference the allegations of paragraphs 1-29.

31. As a result of Defendant's conduct, it has been unjustly enriched at the expense of Woodchuck and the law thereby implies a contract by which the Defendant must pay to Woodchuck the amount by which, in equity and good conscience, the Defendant has been unjustly enriched at the expense of Woodchuck.

**WHEREFORE**, Woodchuck seeks judgment against the Defendant as follows:

1. An injunction against Defendant enjoining any further infringement of Woodchuck's Federal and common law trademarks in the United States; and

2. An award in the amount by which Defendant has been unjustly enriched; and

3. An order requiring the destruction of all infringing articles; and

4. An order requiring remedial advertising; and

5. Costs of suit, including Woodchuck's reasonable attorneys' fees; and

6. Such further relief as this Court deems just.

DINSE, KNAPP & MCANDREW, P.C.

Dated: May 13, 2013     By: _____
                        for Ritchie E. Berger, Esq.
                        DINSE, KNAPP & MCANDREW, P.C.
                        P.O. Box 988, 209 Battery Street
                        Burlington, VT 05402-0988
                        Phone: (802) 864-5751
                        Fax: (802) 859-8729
                        Email: RBerger@dinse.com

                        *Attorneys for Plaintiff,*
                        *Vermont Hard Cider Company, LLC*

{B1045977.1 14440-0001}